IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| PAUL WASHINGTON FEDORE, | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Civil Action No. 12-1554 |
| | ) Electronically Filed |
| CAROLYN W. COLVIN, ACTING | ) |
| COMMISSIONER OF SOCIAL | ) |
| SECURITY, | ) |
| Defendant. | ) |

## MEMORANDUM OPINION

### I. Introduction

Plaintiff Paul Washington Fedore ("Fedore") brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3), seeking judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying his applications for disability insurance benefits ("DIB") and supplemental security income ("SSI") benefits under Titles II and XVI of the Social Security Act ("Act") [42 U.S.C. §§ 401-433, 1381-1383f]. The matter is presently before the Court on cross-motions for summary judgment filed by the parties pursuant to Federal Rule of Civil Procedure 56. ECF Nos. 10 & 12. For the reasons that follow, Fedore's motion for summary judgment (*ECF No. 12*) will be denied, the Commissioner's motion for summary judgment (*ECF No. 10*) will be granted, and the final decision of the Commissioner will be affirmed.

### II. Procedural History

Fedore applied for DIB and SSI benefits on November 14, 2008, alleging that he had become "disabled" on June 30, 2008. R. 134, 138. Pennsylvania's Bureau of Disability

1

Determination ("Bureau") denied the applications on March 16, 2009. R. 70, 75. Fedore apparently took no further action with respect to those applications.

On October 21, 2009, Fedore protectively filed new applications for DIB and SSI benefits. R. 149, 151, 172. He continued to allege the existence of a "disability" beginning on June 30, 2008. R. 149, 151. The applications were denied by the Bureau on February 25, 2010. R. 86, 91. Fedore responded on March 3, 2010, by filing a request for an administrative hearing. R. 96-97. On April 18, 2011, a hearing was held before Administrative Law Judge ("ALJ") Douglas Cohen. R. at 28. Fedore, who was represented by counsel, appeared and testified at the hearing. R. 31-50. Testimony about Fedore's medical condition was also given by his treating clinician, Rebecca Oxley ("Oxley"), and his father, Michael John Fedore ("Michael"). R. 51-63. Dr. William Houston Reed, an impartial vocational expert, testified about the typical requirements of jobs existing in the national economy. R. 64-66. In a decision dated May 18, 2011, the ALJ determined that Fedore was not "disabled" within the meaning of the Act. R. 7-21. Since the earlier applications had been denied on March 16, 2009, the ALJ's decision adjudicated Fedore's status only in relation to the period of time following that date. R. at 10.

After receiving notice of the ALJ's decision, Fedore exhausted his administrative remedies by filing a request for review with the Appeals Council. R. 232-233. The Appeals Council denied the request for review on August 31, 2012, thereby making the ALJ's decision the "final decision" of the Commissioner in this case. R. 1. Fedore commenced this action on October 26, 2012, seeking judicial review of the Commissioner's decision. ECF Nos. 1 & 2. The parties filed cross-motions for summary judgment[1] on March 27, 2013. ECF Nos. 10 & 12. Those motions are the subject of this memorandum opinion.

---

[1] Fedore alternatively refers to his motion for summary judgment as a motion for judgment on the pleadings filed pursuant to Federal Rule of Civil Procedure 12(c). ECF No. 13 at 1. A court presented with a motion for judgment

2

## III. Standard of Review

This Court's review is plenary with respect to all questions of law. *Schaudeck v. Commissioner of Social Security Administration*, 181 F.3d 429, 431 (3d Cir. 1999). With respect to factual issues, judicial review is limited to determining whether the Commissioner's decision is "supported by substantial evidence." 42 U.S.C. § 405(g); *Adorno v. Shalala*, 40 F.3d 43, 46 (3d Cir. 1994). A United States District Court may not undertake a *de novo* review of the Commissioner's decision or re-weigh the evidence of record. *Monsour Medical Center v. Heckler*, 806 F.2d 1185, 1190-1191(3d Cir. 1986). Congress has clearly expressed its intention that "[t]he findings of the Commissioner of Social Security as to any fact, if supported by substantial evidence, shall be conclusive." 42 U.S.C. § 405(g). Substantial evidence "does not mean a large or considerable amount of evidence, but rather such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Pierce v. Underwood*, 487 U.S. 552, 565 (1988) (internal quotation marks omitted). As long as the Commissioner's decision is supported by substantial evidence, it cannot be set aside even if this Court "would have decided the factual inquiry differently." *Hartranft v. Apfel*, 181 F.3d 358, 360 (3d Cir. 1999). "Overall, the substantial evidence standard is a deferential standard of review." *Jones v. Barnhart*, 364 F.3d 501, 503 (3d Cir. 2004).

In order to establish a disability under the Act, a claimant must demonstrate a "medically determinable basis for an impairment that prevents him [or her] from engaging in any 'substantial gainful activity' for a statutory twelve-month period." *Stunkard v. Secretary of*

---

on the pleadings must assume the truth of the plaintiff's allegations. *Zion v. Nassan*, 283 F.R.D. 247, 254 (W.D.Pa. 2012). The statute authorizing judicial review of the Commissioner's decision provides a reviewing court with the power to enter a judgment "upon the pleadings and transcript of the record." 42 U.S.C. § 405(g). Since the "transcript of the record" can be considered along with "the pleadings," the motion is more properly regarded as a motion for summary judgment. Nevertheless, the Court acknowledges that judicial review under the Act is not governed by the standards applicable under Federal Rule of Civil Procedure 56. *Flores v. Heckler*, 755 F.2d 401, 403 (5th Cir. 1985). Since Fedore's motion does not fit squarely within Rule 12(c) or Rule 56, its procedural characterization is inconsequential.

3

*Health & Human Services*, 841 F.2d 57, 59 (3d Cir. 1988); *Kangas v. Bowen*, 823 F.2d 775, 777 (3d Cir. 1987); 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). A claimant is considered to be unable to engage in substantial gainful activity "only if his [or her] physical or mental impairment or impairments are of such severity that he [or she] is not only unable to do his [or her] previous work but cannot, considering his [or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. §§ 423(d)(2)(A), 1382c(a)(3)(B).

To support his or her ultimate findings, an administrative law judge must do more than simply state factual conclusions. He or she must make specific findings of fact. *Stewart v. Sec'y of Health, Educ. & Welfare*, 714 F.2d 287, 290 (3d Cir. 1983). The administrative law judge must consider all medical evidence contained in the record and provide adequate explanations for disregarding or rejecting evidence. *Weir on Behalf of Weir v. Heckler*, 734 F.2d 955, 961 (3d Cir. 1984); *Cotter v. Harris*, 642 F.2d 700, 705 (3d Cir. 1981).

The Social Security Administration ("SSA"), acting pursuant to its legislatively delegated rule making authority, has promulgated a five-step sequential evaluation process for the purpose of determining whether a claimant is "disabled" within the meaning of the Act. The United States Supreme Court recently summarized this process as follows:

> If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further. At the first step, the agency will find non-disability unless the claimant shows that he is not working at a "substantial gainful activity."[20 C.F.R.] §§ 404.1520(b), 416.920(b). At step two, the SSA will find non-disability unless the claimant shows that he has a "severe impairment," defined as "any impairment or combination of impairments which significantly limits [the claimant's] physical or mental ability to do basic work activities." §§ 404.1520(c), 416.920(c). At step three, the agency determines whether the impairment which enabled the claimant to survive step two is on the list of impairments presumed severe enough to render one disabled; if so, the claimant qualifies. §§ 404.1520(d), 416.920(d). If the claimant's impairment is not on the list, the inquiry proceeds to step four, at which the SSA assesses whether the

4

claimant can do his previous work; unless he shows that he cannot, he is determined not to be disabled. If the claimant survives the fourth stage, the fifth, and final, step requires the SSA to consider so-called "vocational factors" (the claimant's age, education, and past work experience), and to determine whether the claimant is capable of performing other jobs existing in significant numbers in the national economy. §§ 404.1520(f), 404.1560(c), 416.920(f), 416.960(c).

*Barnhart v. Thomas*, 540 U.S. 20, 24-25 (2003) (footnotes omitted). Factual findings pertaining to all steps of the sequential evaluation process are subject to judicial review under the "substantial evidence" standard. *McCrea v. Commissioner of Social Security*, 370 F.3d 357, 360-361 (3d Cir. 2004).

In an action in which review of an administrative determination is sought, the agency's decision cannot be affirmed on a ground other than that actually relied upon by the agency in making its decision. In *Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194 (1947), the Supreme Court explained:

> When the case was first here, we emphasized a simple but fundamental rule of administrative law. That rule is to the effect that a reviewing court, in dealing with a determination or judgment which an administrative agency alone is authorized to make, must judge the propriety of such action solely by the grounds invoked by the agency. If those grounds are inadequate or improper, the court is powerless to affirm the administrative action by substituting what it considers to be a more adequate or proper basis. To do so would propel the court into the domain which Congress has set aside exclusively for the administrative agency.

*Chenery Corp.*, 332 U.S. at 196.

The United States Court of Appeals for the Third Circuit has recognized the applicability of this rule in the Social Security disability context. *Fargnoli v. Massanari*, 247 F.3d 34, 44, n. 7 (3d Cir. 2001). Thus, the Court's review is limited to the four corners of the ALJ's decision. *Cefalu v. Barnhart*, 387 F.Supp.2d 486, 491 (W.D.Pa. 2005).

**IV.    The ALJ's Decision**

In his decision, the ALJ determined that Fedore had not engaged in substantial gainful activity subsequent to March 16, 2009. R. at 13. Fedore was found to be suffering from a

5

migraine disorder, obesity, major depressive disorder, attention deficit hyperactivity disorder ("ADHD"), intermittent explosive disorder, and a left knee impairment. R. at 13. These impairments were deemed to be "severe" under the Commissioner's regulations. 20 C.F.R. §§ 404.1520(a)(4)(ii), 404.1520(c), 416.920(a)(4)(ii), 416.920(c). The ALJ concluded that Fedore's impairments did not meet or medically equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1. R. 13-15.

In accordance with 20 C.F.R. §§ 404.1545 and 416.945, the ALJ assessed Fedore's "residual functional capacity"[2] as follows:

> After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform medium work as defined in 20 CFR 404.1567(c) and 416.967(c) except limited to simple, routine, repetitive tasks, not performed in a fast-paced production environment, involving only simple, work-related decisions, and in general, relatively few work place changes; occupations not involving high levels of stress, i.e. requiring independent decision making; no contact with the general public; and, only superficial contact with supervisors and co-workers.

R. 16. Fedore had no "past relevant work"[3] experience. R. 20. He was born on June 11, 1988, making him twenty years old on his alleged onset date and twenty-two years old on the date of the ALJ's decision. R. 20, 134. Fedore was classified as a "younger person" under the Commissioner's regulations. 20 C.F.R. §§ 404.1563(c), 416.963(c). He had a high school education[4] and an ability to communicate in English. R. 20, 176, 183. Given the applicable residual functional capacity and vocational assessments, the ALJ concluded that Fedore could

---

[2] The term "residual functional capacity" is defined as "that which an individual is still able to do despite the limitations caused by his or her impairments." *Hartranft v. Apfel*, 181 F.3d 358, 359, n. 1 (3d Cir. 1999)(parentheses omitted), citing 20 C.F.R. § 404.1545(a). The same residual functional capacity assessment is used at the fourth and fifth steps of the sequential evaluation process. 20 C.F.R. §§ 404.1545(a)(5)(i)-(ii), 416.945(a)(5)(i)-(ii).

[3] "Past relevant work" is defined as "substantial gainful activity" performed by a claimant within the last fifteen years that lasted long enough for him or her to learn how to do it. 20 C.F.R. §§ 404.1560(b)(1), 416.960(b)(1). The Commissioner has promulgated comprehensive regulations governing the determination as to whether a claimant's work activity constitutes "substantial gainful activity." 20 C.F.R. §§ 404.1571-404.1576, 416.971-416.976.

[4] Fedore graduated from Shaler High School in 2006. R. 357-358.

6

work as a janitor/cleaner, kitchen helper or laborer. R. 20. Dr. Reed's testimony established that these jobs existed in the national economy for purposes of 42 U.S.C. §§ 423(d)(2)(A) and 1383c(a)(3)(B).[5] R. 65.

V.   **Discussion**

At the end of the hearing, the ALJ stated that the record would be left open for fifteen additional days so that Fedore could submit his treatment records from the University of Pittsburgh Medical Center's Western Psychiatric Institute and Clinic ("WPIC"). R. 67. Fedore apparently had difficulty procuring those records. R. 67. The records were not submitted within the fifteen-day period, and the ALJ issued his decision on May 18, 2011. R. 12. Acknowledging the absence of the records from the WPIC, the ALJ stated that there was already "sufficient evidence in the file to render a determination" in Fedore's case. R. 12.

The Commissioner's regulations permit a claimant to present "new and material evidence" to the Appeals Council in support of a request for review. 20 C.F.R. §§ 404.970(b), 416.1470(b). The Appeals Council must consider such evidence in deciding whether to review the decision denying the claimant's application for benefits. *Id.* Although the records from the WPIC were never presented to the ALJ, they were later submitted to the Appeals Council in connection with Fedore's request for review. R. 4-5, 530-672.

Where the Appeals Council grants a claimant's request for review and issues its own decision, that decision becomes the Commissioner's "final decision" in the claimant's case. *Sims v. Apfel*, 530 U.S. 103, 106-107, 120 S.Ct. 2080, 147 L.Ed.2d 80 (2000). Where the Appeals Council denies the claimant's request for review and declines to render a new decision,

---

[5] At the fifth step of the sequential evaluation process, "the Commissioner bears the burden of proving that, considering the claimant's residual functional capacity, age, education, and past work experience, [he or] she can perform work that exists in significant numbers in the regional or national economy." *Boone v. Barnhart*, 353 F.3d 203, 205 (3d Cir. 2003). This burden is commonly satisfied by means of vocational expert testimony. *Rutherford v. Barnhart*, 399 F.3d 546, 551 (3d Cir. 2005).

7

the ALJ's decision becomes the "final decision" of the Commissioner. *Id.* When the Appeals Council denied Fedore's request for review, the ALJ's decision became the Commissioner's "final decision" in this case. R. 1.

The Act authorizes judicial review only over a "final decision" of the Commissioner. *Califano v. Sanders*, 430 U.S. 99, 108, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977); *Bacon v. Sullivan*, 969 F.2d 1517, 1519-1521 (3d Cir. 1992). A federal court has no jurisdiction to entertain a challenge to a decision by the Appeals Council denying a claimant's request for review. *Matthews v. Apfel*, 239 F.3d 589, 594 (3d Cir. 2001). Since it is the ALJ's decision that is presently under review, the Court can consider only the evidence that was presented to him in determining whether his decision is supported by substantial evidence. *Chandler v. Commissioner of Social Security*, 667 F.3d 356, 360 (3d Cir. 2011).

The sixth sentence of § 405(g) provides that a reviewing court "may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding." 42 U.S.C. § 405(g). The hearing transcript suggests that Fedore was diligently attempting to procure his treatment records from the WPIC, and that his inability to obtain them in a timely manner was not attributable to negligence on his part. R. 67-68. A delay caused by WPIC personnel would most likely constitute "good cause" for Fedore's failure to submit the records to the ALJ. *Matthews*, 239 F.3d at 595. Under the circumstances of this case, however, the records presented to the Appeals Council are not "material" within the meaning of sentence six. "[T]he materiality standard requires that there be a reasonable possibility that the new evidence would have changed the outcome of the [Commissioner's] determination." *Szubak v. Secretary of Health & Human*

8

*Services*, 745 F.2d 831, 833 (3d Cir. 1984). The WPIC records submitted to the Appeals Council include a treatment note prepared by Fedore's treating psychiatrist, Dr. Vernon Nathaniel, on February 25, 2011. R. 549. In that note, Dr. Nathaniel stated that Fedore's impairments did not render him "disabled" under the Act, and that documentation supporting his applications for benefits would not be provided. R. 549. Given the tenor of Dr. Nathaniel's observation, there is no "reasonable possibility" that the treatment records would have changed the ALJ's decision in this case. *Szubak*, 745 F.2d at 833. Therefore, Fedore is not entitled to a sentence-six remand.

The Listing of Impairments describes impairments which render a claimant *per se* disabled without regard to his or her age, education, or past work experience. *Bowen v. Yuckert*, 482 U.S. 137, 153, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987); *Knepp v. Apfel*, 204 F.3d 78, 85 (3d Cir. 2000). In order to qualify as *per se* disabled under the Commissioner's regulations, a claimant must demonstrate that his or her impairment (or combination of impairments) either "matches" a Listing or is "equivalent" to a Listing. *Sullivan v. Zebley*, 493 U.S. 521, 530-531, 110 S.Ct. 885, 107 L.Ed.2d 967 (1990). An impairment "matches" a Listing only if it satisfies *all* of the relevant medical criteria. *Id.* at 530. An impairment is "equivalent" to a Listed Impairment only if it is supported by medical findings equal in severity to *all* of the criteria applicable to the most similar Listing. *Id.* at 531. The claimant bears the burden of presenting evidence to support his or her allegation of *per se* disability. *Williams v. Sullivan*, 970 F.2d 1178, 1186 (3d Cir. 1992).

At the third step of the sequential evaluation process, the ALJ determined that Fedore's mental impairments did not meet or medically equal Listing 12.04. R. 14-15. Fedore challenges that determination. ECF No. 13 at 11-13. The record indicates that Fedore has been hospitalized for psychiatric reasons on several different occasions. R. 257-262, 436. Relying on those
9

hospitalizations, Fedore contends that the ALJ should have found him to be *per se* disabled under Listing 12.04. ECF No. 13 at 12. The existence of a statutory disability, however, depends on a claimant's ability (or inability) to work during the relevant period of time. *Barnhart v. Walton*, 535 U.S. 212, 214-225, 122 S.Ct. 1265, 152 L.Ed.2d 330 (2002). Only one of Fedore's hospitalizations occurred during the period of time relevant to this case. R. 34. The other hospitalizations occurred several years before his alleged onset date. R. 436. Fedore fails to tie his argument concerning the earlier hospitalizations to the relevant period of time. *Id.* at 11-13.

Dr. Arlene Rattan, a non-examining psychological consultant, opined on February 4, 2010, that Fedore's mental impairments did not meet or medically equal Listing 12.04. R. 365, 368, 375. The ALJ adopted Dr. Rattan's opinion in determining that Fedore was not *per se* disabled under that Listing. R. 14-15. Fedore points to nothing in the record which contradicts Dr. Rattan's findings. ECF No. 13 at 11-13. Since no treating or examining source asserted that Fedore was *per se* disabled, Dr. Rattan's assessment was more than sufficient to justify the ALJ's step-three conclusion. *Brown v. Astrue*, 649 F.3d 193, 196-197 (3d Cir. 2011); *Jones v. Sullivan*, 954 F.2d 125, 129 (3d Cir. 1991).

Fedore's remaining arguments relate to the ALJ's residual functional capacity assessment and corresponding hypothetical questions to Dr. Reed. ECF No. 13 at 13-21. A vocational expert's testimony cannot be relied upon to establish the existence of jobs in the national economy consistent with a claimant's residual functional capacity unless the questions eliciting that testimony make reference to all of the claimant's functional limitations. *Burns v. Barnhart*, 312 F.3d 113, 123 (3d Cir. 2002). Where a credibly established limitation is not mentioned, there is a danger that the vocational expert will identify jobs requiring the performance of tasks that would be precluded by the omitted limitation. *Ramirez v. Barnhart*, 372 F.3d 546, 552-555

(3d Cir. 2004). In this case, every limitation contained within the ALJ's residual functional capacity finding was conveyed to Dr. Reed at the hearing. R. 16, 64-66. For this reason, Fedore's challenge to the adequacy of the ALJ's hypothetical questions at the hearing is more appropriately regarded as a direct attack on the underlying residual functional capacity assessment. *Rutherford v. Barnhart*, 399 F.3d 546, 554, n. 8 (3d Cir. 2005).

Fedore underwent surgery to repair a torn meniscus in his left knee on December 8, 2008. R. 334-336. The operation was performed by Dr. Ralph Passarelli. R. 334. At the hearing, Fedore could not remember whether he had sought follow-up treatment for his knee in the aftermath of the surgery. R. 40-41. Nevertheless, he testified that the surgery had not alleviated his knee pain. R. 45-46.

On February 17, 2010, Dr. Lawrence F. Rahall performed a consultative physical examination of Fedore in connection with his applications for DIB and SSI benefits. R. 378-388. After completing the examination, Dr. Rahall reported that Fedore had no physical limitations. R. 380-381. Dr. Paul Fox, a non-examining medical consultant, opined on February 23, 2010, that Fedore was physically capable of engaging in an unrestricted range of "medium"[6] work activities. R. 389-395. According "great weight" to Dr. Fox's opinion, the ALJ gave Fedore "the benefit of the doubt" by restricting him to "medium" work. R. 18. The Court does not understand Fedore to argue that he has physical limitations extending beyond those found by the ALJ. Instead, Fedore's arguments appear to be based solely on the findings pertaining to his mental impairments. ECF No. 13 at 13-20.

Dr. Tod R. Marion performed a consultative psychological evaluation of Fedore on January 22, 2010. R. 357-360. Based on his examination findings, Dr. Marion reported that

---

[6] "Medium work involves lifting no more than 50 pounds at a time with frequent lifting or carrying of objects weighing up to 25 pounds." 20 C.F.R. §§ 404.1567(c), 416.967(c).

11

Fedore had "marked" limitations in his abilities to respond appropriately to work pressures in a usual work setting, respond appropriately to changes in a routine work setting, and interact appropriately with supervisors, co-workers, and members of the general public. R. 359. Dr. Marion further indicated that Fedore was "moderately" limited in his abilities to understand, remember and carry out detailed instructions. R. 359. Fedore's ability to make judgments concerning simple work-related decisions was deemed to be only "slightly" limited. R. 359. No limitations were found in his abilities to understand, remember and carry out short, simple instructions. R. 359.

In her consultative report, Dr. Rattan described Dr. Marion's examination report as "an overestimate of the severity of the claimant's functional restrictions." R. 364. Commenting on Fedore's functional abilities, Dr. Rattan stated as follows:

> The claimant can make simple decisions. His frustration tolerance is low. He evidences some limitation in dealing with work stresses and public contact. He retains the ability to perform repetitive work activities without constant supervision. There are no restrictions in his abilities in regards to understanding and memory.

R. 363. No "marked" limitations were identified by Dr. Rattan. R. 361-362. She concluded her report by asserting that Fedore was "able to meet the basic mental demands of competitive work on a sustained basis despite the limitations resulting from his impairment." R. 364.

Fedore was examined by Christine L. Volk ("Volk"), a physician assistant, on March 24, 2011. R. 439-441. In the portion of her treatment notes discussing the history of Fedore's illness, Volk made the following observations:

> The patient reports that he has had a [sic] independent evaluation for Social Security Disability benefits but this examiner does not have access to that report. The patient reports that he has an SSDI hearing in April. He reports that his behavior health specialist refused to complete the SSDI forms from his attorney.

R. 439. After performing a physical examination, Volk advised Fedore to seek follow-up psychiatric care at the WPIC. R. 441. Since she had never treated Fedore "for any mental health issues," Volk refused to complete the "specialty-specific" forms provided by his counsel. R. 441. In a letter dated March 4, 2011, Dr. Nathaniel described Fedore's course of psychiatric treatment during the previous four and a half years. R. 436-437. Dr. Nathaniel's letter made no reference to work-related limitations. R. 436-437.

In his decision, the ALJ noted that a treating "behavioral health specialist" had refused to complete the forms provided by Fedore's attorney. R. 18. That observation was an obvious reference to the statement that Fedore had made to Volk. R. 439. The ALJ also made reference to Dr. Nathaniel's letter. R. 17. Although the ALJ did not have access to Dr. Nathaniel's treatment note of February 25, 2011, which expressly stated that Fedore was not disabled, it was already clear from the existing record that Fedore's treating healthcare providers were not supporting his efforts to secure DIB and SSI benefits. R. 17-18, 439, 441, 549.

The ALJ accorded "great weight" to Dr. Rattan's opinion and "little weight" to Dr. Lawrence's assessment. R. 18-19. Fedore faults the ALJ for crediting the opinion of a non-examining consultant over that of an examining source. ECF No. 13 at 13-17. Under the Commissioner's regulations, an assessment supplied by an examining source is ordinarily entitled to more weight than an assessment provided by a non-examining consultant. 20 C.F.R. §§ 404.1527(c)(1), 416.927(c)(1). Given the other evidence contained in the record, however, the ALJ had an adequate basis for discounting Dr. Lawrence's examination findings. The probative force of every medical opinion must be judged in relation to the evidentiary record as a whole. *Miller v. Commissioner of Social Security*, 172 F.3d 303, 304 (3d Cir. 1999). In view of the fact that Fedore's treating healthcare providers did not believe him to be disabled, the ALJ

13

acted within his discretion in deciding to credit Dr. Rattan's opinion. *Morales v. Apfel*, 225 F.3d 310, 317 (3d Cir. 2000)(recognizing an administrative law judge's prerogative to credit the findings of a "non-treating, non-examining physician").

It is also worth noting that the ALJ "did not merely rubber stamp" Dr. Rattan's conclusions. *Chandler*, 667 F.3d at 361. The ALJ generally accounted for the "marked" limitations described in Dr. Marion's examination report by restricting Fedore to a range of *low-stress* work involving *few* workplace changes, *no* public contact, and only *superficial* contact with supervisors and co-workers. R. 16, 359. A claimant who is "markedly" limited in a given area is not completely precluded from functioning in that area. *Hansford v. Astrue*, 805 F.Supp.2d 140, 146, n. 5 (W.D.Pa. 2011). The alleged "moderate" limitations in Fedore's abilities to understand, remember and carry out *detailed* instructions were adequately accommodated by the limitations permitting the performance of only *simple*, routine, repetitive tasks and the making of only *simple* work-related decisions. R. 16, 359. Dr. Marion found no limitations in Fedore's abilities to understand, remember and carry out short, simple instructions. R. 359. In these respects, the ALJ's residual functional capacity assessment was not inherently inconsistent with Dr. Marion's examination findings.

The ALJ received letters from Fedore's aunt and parents describing the effects of his mental impairments on his day-to-day activities. R. 214-216, 219-221, 227-228. The letters discussed instances in which Fedore had been unable to keep jobs. The functional deficiencies discussed in those letters, however, were generally accommodated by the ALJ's residual functional capacity assessment. Fedore's aunt, Amy Fenn, stated that Fedore had been discharged by a Wendy's fast-food restaurant for failing or refusing to increase the pace of his hamburger production. R. 225. The ALJ accounted for that deficiency by restricting Fedore to a

14

range of work that would not be "performed in a fast-paced production environment." R. 16. Michael's letter described an incident in which Fedore had lost a job as a bartender because of an altercation with a busboy. R. 214. Michael also referenced that incident during his testimony at the hearing. R. 63. The ALJ addressed the concerns stemming from Fedore's confrontational tendencies by limiting him to jobs involving no interaction with members of the general public and only superficial interaction with supervisors and co-workers. R. 16. Although the ALJ was required to seriously consider Fedore's subjective complaints, he was not required to credit them in every respect. *Chandler*, 667 F.3d at 363. Fedore's challenge to the ALJ's weighing of the testimonial evidence is plainly without merit. ECF No. 17-20.

In a final attempt to impugn the ALJ's decision, Fedore maintains that Dr. Reed's testimony was inconsistent with information found in the Dictionary of Occupational Titles ("DOT"). ECF No. 13 at 20-21. Dr. Reed responded in the affirmative when asked whether his testimony was consistent with the DOT's job descriptions. R. 66. Relying on job descriptions found in the DOT, Fedore contends that individuals working as kitchen helpers and cleaners are frequently required to interact with others. ECF No. 13 at 21. At the hearing, Dr. Reed did not provide code numbers for the positions described in his testimony. R. 65. Consequently, it is not clear whether he was referring to the same positions discussed in Fedore's brief, or whether he was referring to distinct positions found in other portions of the DOT.

Even if it is assumed that Dr. Reed's testimony differed from information found in the DOT, this "conflict" does not require the Court to set aside the ALJ's decision in this case. *Jones*, 364 F.3d at 506, n. 6. The United States Court of Appeals for the Third Circuit has explained that inconsistencies between a vocational expert's testimony and the job descriptions contained in the DOT "need not be fatal if substantial evidence exists in other portions of the

record that can form an appropriate basis to support the result" reached by the Commissioner. *Rutherford*, 399 F.3d at 557. Although Dr. Reed testified that there were 1.6 million janitor/cleaner jobs in the national economy, he reduced that number by 600,000 in order to exclude positions requiring individuals to work in teams. R. 65. This reduction clearly demonstrates that Dr. Reed was taking the personal-contact limitations into account in determining the number of jobs available to someone in Fedore's position. Dr. Reed also reduced the number of available kitchen helper positions from 500,000 to 300,000 in order to eliminate jobs requiring individuals to work at a fast-paced production rate. R. 65. The differences between Dr. Reed's testimony about the requirements of particular jobs and the official job descriptions found in the DOT are reflected in the 800,000 jobs eliminated by Fedore's personal-contact and pace restrictions.

Fedore also argues that the DOT defines a "general laborer" position as a "heavy"[7] or "very heavy"[8] job. ECF No. 13 at 21. He faults Dr. Reed for not specifying the type of "laborer" position discussed at the hearing. *Id.* Nevertheless, a close reading of the transcript reveals that Dr. Reed was referring to a "wall washer" laborer position existing at the "medium" level of exertion rather than the "general laborer" position referenced in Fedore's brief. R. 65. Therefore, the argument advanced by Fedore provides no basis for disturbing the ALJ's decision.

## VI. Conclusion

The Commissioner's decision denying Fedore's applications for DIB and SSI benefits is "supported by substantial evidence." 42 U.S.C. § 405(g). Fedore's motion for summary judgment (*ECF No. 12*) will be denied, and the Commissioner's motion for summary judgment

---

[7] "Heavy work involves lifting no more than 100 pounds at a time with frequent lifting or carrying of objects weighing up to 50 pounds." 20 C.F.R. §§ 404.1567(d), 416.967(d).
[8] "Very heavy work involves lifting objects weighing more than 100 pounds at a time with frequent lifting or carrying of objects weighing 50 pounds or more." 20 C.F.R. §§ 404.1567(e), 416.967(e).

16

(*ECF No. 10*) will be granted.  In accordance with the fourth sentence of § 405(g), the "final decision" of the Commissioner in this case will be affirmed.  An appropriate order will follow.

Arthur J. Schwab
United States District Judge

cc: All counsel of record